UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL A. BUTLER,

    Petitioner,

v.                                                           Case No. 09-C-997

KRISTEN ASCHENBRENNER, Supervising
Agent, and QUALA CHAMPAGNE,
Administrator, Division of Community Corrections,
Wisconsin Department of Corrections,[1]

    Respondents.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

### I. PROCEDURAL AND FACTUAL BACKGROUND

On October 21, 2009, the petitioner, Paul A. Butler ("Butler"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. According to Butler's petition and the respondents' answer, on June 5, 2007, Butler was convicted in the Milwaukee County Circuit Court of unlawfully possessing a firearm as a felon, in violation of Wis. Stat. § 941.29(2)(a), and received a four-year bifurcated sentence consisting of eighteen months of initial confinement and thirty months of extended supervision.

On January 18, 2008, Butler filed a postconviction motion for relief pursuant to Wis. Stat. § 809.30, which the Milwaukee County Circuit Court denied on July 1, 2008. On March 24, 2009, the Wisconsin Court of Appeals affirmed Butler's judgment of conviction. *State v. Butler*, 2009 WI App 52, ¶¶ 4-6, 317 Wis. 2d 515, 768 N.W.2d 46. On June 16, 2009, the Wisconsin Supreme Court

---

[1] Subsequent to filing his habeas corpus petition, to wit, on December 20, 2009, petitioner Butler was released on extended supervision.

denied Butler's petition for review. Thereafter, on October 21, 2009, Butler filed this habeas corpus petition.

Butler's habeas corpus petition presents four claims: (1) that his no contest plea was unlawfully induced and made without an understanding of the nature of the charge or the consequences of his plea; (2) that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (3) that his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest and (4) that he was denied the effective assistance of counsel.

The facts giving rise to this case are presented in the Wisconsin Court of Appeals' decision:

> According to Butler's affidavit and police reports submitted by him to the circuit court in support of his motion to withdraw his plea, this case began when a private security guard working for a Chuck E. Cheese restaurant saw Butler driving on the Chuck E. Cheese property in a way that the security guard thought was reckless. The security guard detained, handcuffed, and searched Butler, and called the police when he saw that Butler was wearing an empty gun holster. According to one of the reports, a document headed "Detailed History of Police Call" in connection with the officers' dispatch to the restaurant, the police were told that Butler "is wearing a holster for a gun [,] but they [the persons at Chuck E. Cheese] cannot find the gun. Need help ASAP. Still in the parking lot." (Some uppercasing omitted.)
>
> When the police arrived in response to the man-with-a-possible-gun call, the security guard told one of the officers that, again as recounted by one of the police reports Butler submitted to the circuit court, Butler "was driving his vehicle recklessly on the [Chuck E. Cheese] property and on the city streets around it . . . in excess of 40 MPH northbound in the parking lot in front of the business that was full of vehicles and some pedestrians walking to and from the restaurant." The security guard also told the officer, again as recounted by the police report, that the security guard saw Butler "make a motion with his arm from his waist to the passenger side of the vehicle and that he had a dark object in his right hand."
>
> One of the responding officers told Butler that he was being arrested for reckless driving, and his partner searched Butler. [FN 1: On one of the police reports Butler submitted to the circuit court, the time of the arrest is indicated as "6:25 PM" and the "charge" references "941.29(1)," which sets out circumstances when possession of a firearm is unlawful.] The arresting officer then reported that he saw that Butler "had a black gun holster attached to the right side of his belt." According to the officer's report, Butler told him that the holster was "for a BB gun that he owns." One of the officers then searched Butler's car and found a loaded "black .45 caliber semi-automatic pistol" in the car's glove compartment.

2

*State v. Butler*, 2009 WI App 52, ¶¶ 4-6.

The issues raised in Butler's petition are now fully briefed and are ready for resolution. For the reasons that follow, Butler's petition will be denied and this action will be dismissed.

## II. LEGAL STANDARD

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Ill. Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner

3

rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 n.3 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722,

4

729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998). With the foregoing in mind, the court turns to the petitioner's claims.

### III. DISCUSSION

As previously stated, Butler presents four claims in his habeas petition: (1) that his no contest plea was unlawfully induced and made without an understanding of the nature of the charge or the consequences of his plea; (2) that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (3) that his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest and (4) that he was denied the effective assistance of counsel.

5

### A. Unlawful Inducement of No Contest Plea

In his brief (which is entitled "Response to Respondents['] Answer for Writ of Habeas Corpus"), Butler does not present any argument in support of this particular claim. In the petition itself, however, Butler asserts as follows:

> I did not know that entering the plea of no contest would mean I would be found guilty nor did my lawyer explain this to me. I also did not know of the rights I would waive if I plead guilty, which is why I immediately appealed the sentence and conviction. I also was not informed by either of my trial lawyers of what the prosecution would have the burden of proving in order to convict me.

(Pet. ¶ 22 A.)

> The respondents argue that this particular claim has been procedurally defaulted by Butler. This court cannot consider the merits of this claim because Butler procedurally defaulted it by omitting it from his court of appeals' briefs and his petition for review on direct appeal of his conviction. Although postconviction counsel Trisha Stewart Martin raised this claim in the Wis. Stat. § 809.30 motion she filed in the trial court, she omitted that claim from her court of appeals' briefs and from the petition for review she filed in the Wisconsin Supreme Court. However, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), requires a habeas petitioner to exhaust his federal constitutional claims by invoking one complete round of the state's established appellate review process. Because Butler did not present Ground One to the state court of appeals or state supreme court on direct appeal, he failed to exhaust that claim and it is too late to do so now. Butler has therefore procedurally defaulted Ground One.

(Resp'ts' Br. at 3) (internal citations omitted).

I agree with the respondents. A review of the briefs filed on behalf of Butler in his appeal reveal that no where in those briefs did Butler claim that his no contest plea was somehow unlawfully induced or that he did not understand the nature of the charges or the consequences of his plea. Instead, the issues raised in his appeal related only to (1) the claimed unlawfulness of the search and seizure that led to discovery of inculpatory evidence, and (2) the claimed ineffectiveness of his trial counsel for counsel's failure to challenge the search and seizure.

To reiterate, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Butler did not give the state courts such an opportunity with respect to his claim that his no contest plea was unlawfully and unintelligently entered. Such being the case, the doctrine of procedural default forbids this court from addressing such claim, unless Butler can either (1) show cause for the procedural default and actual prejudice resulting from the alleged violation of federal law or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. Butler has made no effort to show either. Indeed, despite the respondents' presenting the procedural default argument in its brief, the petitioner elected to not file a reply brief. Thus, to the extent that Butler's petition is predicated on his first claim, his petition will be denied.

### B. The Unconstitutional Search, Seizure and Arrest

Because Butler's second and third claims both concern alleged unconstitutional actions by law enforcement, as a result of which inculpatory evidence was obtained, they will be addressed together. For the following reasons, neither claim can provide Butler a basis for habeas corpus relief.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494.

> A petitioner has had the benefit of such an opportunity so long as (1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts.

*Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).

In the instant case, Butler did have a full and fair opportunity to litigate his Fourth Amendment claim, albeit in the context of his Wis. Stat. § 809.30 motion challenging the effectiveness of his trial counsel for failing to file a motion to suppress evidence discovered as a result of Butler's alleged unconstitutional seizure and subsequent search of his person and vehicle. Indeed, the court of appeals' decision demonstrates that Butler's Fourth Amendment arguments were given due consideration, but were rejected, by the court.

> The core of Butler's claims in connection with his argument that his circuit-court lawyers were ineffective is his contention that the security guard and the police violated his Fourth Amendment rights against unreasonable searches and seizures. We analyze the various sub-issues in sequence.
>
> First, Butler contends that the security guard's seizure and detention of him and search were government action that permits the invocation of the exclusionary rule. We disagree.
>
> It is settled that "[p]rivate searches are not subject to the Fourth Amendment's protection because the Fourth Amendment applies only to government action." Additionally, although a citizen may detain another citizen "for a misdemeanor committed in the citizen's presence and amounting to a breach of the peace," the applicable reckless-driving provision of the Wisconsin Statutes, WIS. STAT. § 346.62(2) . . . is a forfeiture offense, WIS. STAT. § 346.65(1)(a), and thus not a crime, WIS. STAT. § 939.12, misdemeanor or otherwise, *see* WIS. STAT. § 939.60. We leave for another day whether a citizen is privileged to detain another whom he or she sees breaching the peace by doing something that is not a "crime," however, because unless state-action is involved, a defendant detained by another citizen has no right to suppress the fruits of the citizen's search.
>
> [*State v.*]*Payano-Roman*, [2006 WI 47, 290 Wis. 2d 380, 714 N.W. 2d 548 (2006)] is the leading decision in Wisconsin on whether the government was sufficiently involved with what a private party did to implicate the Fourth Amendment. The following are the controlling criteria: "'(1) the police may not initiate, encourage or participate in the private entity's search; (2) the private entity must engage in the activity to further its own ends or purpose; and (3) the private entity must not conduct the search for the purpose of assisting governmental efforts.'" Further, "a search may be deemed a government search when it is a 'joint endeavor' between private and government actors." . . .
>
> As we see from Butler's submissions that are in the Record, none of the elements of state-action identified by *Payano-Roman* is present here. First, the security guard acted entirely on his own-nothing he did in detaining and initially

searching Butler was instigated by the police. Second, as a Chuck E. Cheese security guard, it was in his interest and in the interest of his employer to keep the restaurant's parking lot safe for other drivers and pedestrians. Third, there is no evidence in the Record or in Butler's offer-of-proof that indicates that the security guard's detention and initial search of Butler was "' for the purpose of assisting governmental efforts.'" Finally, what the security guard did in detaining and initially searching Butler was not part of some "joint endeavor" with law enforcement. Thus, nothing the security guard did violated Butler's Fourth Amendment rights against unreasonable searches and seizures.

Butler argues, however, that the police, once they arrived, did not have probable cause to arrest him and, therefore, the search of the car was unlawful. Although a person may be lawfully arrested for a forfeiture offense that is not a "crime," and searches incident to forfeiture arrests are valid, given the paucity of the Record as to what the security guard told the arriving officers about how Butler was driving (as noted, Butler did not ask for a hearing in connection with his contention that the officers arrested him unlawfully and the only person who testified at the *Machner* hearing was his second lawyer), we need not strain through what is in the Record to assess, without the benefit of any findings of fact by the circuit court, on what would be our *de novo* review of the legal issue, whether the arrest was supported by the requisite probable cause. Rather, given our authority to affirm the circuit court for reasons not relied on by it, and, also on grounds not argued by the respondent, we affirm because the police officers had the right to search Butler's car for the gun, *see Michigan v. Long*, 463 U.S. 1032, 1034-1035, 1047-1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (police have the right under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to search a car when there is reason to suspect that it may contain a gun).

As we have seen, the police were summoned to Chuck E. Cheese because the security guard saw an empty gun holster and was concerned that there would also be a gun. Under these circumstances, the officers' peripheral search of Butler when they saw the empty holster was justified. *See id.*, 463 U.S. at 1047, 103 S.Ct. 3469 ("When the officer has a reasonable belief 'that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'") (quoting *Terry*, 392 U.S. at 24, 88 S.Ct. at 1868). Once the officers saw the holster, the search of Butler's car was also fully justified. *See id.*, 463 U.S. at 1049, 103 S.Ct. 3469 ("[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). Accordingly, any suppression motion

would have been appropriately denied and neither of Butler's two lawyers were ineffective for not making one.

*Butler*, 2009 WI App 52, ¶¶ 10-16 (some internal citations omitted) (footnote omitted).

In sum, because Butler was provided an opportunity for full and fair litigation of his Fourth Amendment claims, *Stone v. Powell* bars this court from even considering granting Butler habeas relief on either his second or third claims as presented in the habeas corpus petition. Thus, to the extent that Butler's petition is predicated on his second or third claims, his petition will be denied.

### C. Ineffective Assistance of Counsel

Finally, Butler claims that his trial counsel was ineffective for not having filed a motion to suppress the evidence obtained as a result of the alleged unconstitutional search, search and arrest. An ineffective assistance of counsel claim is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* is clearly established federal law, as determined by the Supreme Court of the United States. *See Washington v. Smith*, 219 F.3d 620, 627-28 (7th Cir. 2000). Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id*. at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Under the second component, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the

outcome. *Id*. A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

If the court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

In the instant case, the Wisconsin Court of Appeals addressed Butler's claim of ineffective assistance of counsel. In doing so, the court properly identified *Strickland* as the law governing the question presented by Butler. *See Butler*, 2009 WI App 52, ¶¶ 2-3. Thus, the only issue that this court needs to address is whether the Wisconsin Court of Appeals' decision was an unreasonable application of *Strickland*. As previously stated, a state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

As set forth above, the court of appeals fully explained why, even if Butler's trial counsel had filed a motion to suppress, the motion would have been unsuccessful. It logically follows that Butler's counsel was not ineffective.

This court certainly cannot say that the Wisconsin Court of Appeals' decision was an unreasonable application of *Strickland*. To the contrary, the court of appeals' decision was an entirely reasonable application of *Strickland*. If a motion to suppress would have been destined for denial, a

failure to file it can hardly be called ineffective assistance of counsel. Moreover, if any such motion was destined for the denial pile, a defendant surely cannot be said to have been prejudiced by his lawyer's failure to file it. Thus, to the extent that Butler's petition is predicated on his fourth claim, his petition will be denied.

In conclusion, and for all of the foregoing reasons, Butler's petition for a writ of habeas corpus will be denied, and this action will be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Butler, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot*

*v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Butler's habeas corpus petition, none of Butler's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Butler a certificate of appealability. Of course, Butler retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Butler's claims for federal habeas corpus relief be and hereby are **DENIED**;

**IT IS FURTHER ORDERED** that Butler's petition for a writ of habeas corpus and this action be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 9th day of December 2010 at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge